**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MADELINE A. KLANGWALD | : | CIVIL ACTION NO. 05-2932 (MLC) |
|  | : |  |
| Plaintiff, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF SOCIAL SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |

**COOPER, District Judge**

Plaintiff, Madeline A. Klangwald ("Klangwald"), applies for judicial review of the final decision of defendant, the Commissioner of Social Security ("Commissioner"), dated September 16, 2002 in which it was determined that she was (1) not disabled during the period from May 31, 1995 through February 27, 2002, and thus, was not entitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"), and (2) disabled as of February 28, 2002, and thus, is entitled to SSI from that date forward.  (Dkt. entry no. 1.)  Klangwald seeks either reversal with an award of benefits or remand with respect to the issue of whether she was disabled from May 31, 1995 to February 27, 2002.  (Pl. Br., at 2.)  The Court has jurisdiction pursuant to 42 U.S.C. § ("Section") 405(g).  The Court, for the reasons stated herein, will affirm the Commissioner's decision.

**BACKGROUND**

Klangwald filed claims for SSI payments and DIB under the Social Security Act, 42 U.S.C. § 301, et seq., on June 26 and July 30, 1996.  (A.R., at 13.)  Klangwald alleged that she had been disabled since May 31, 1995 due to a left knee injury and pain.  (Id.)  The Commissioner denied the claims on August 29, 1996, and affirmed this denial on December 10, 1996 after receiving a request for reconsideration.  (Id. at 22, 30.) Klangwald filed a timely request for a hearing before an administrative law judge on January 9, 1997.  (Id. at 33.) Accordingly, Administrative Law Judge ("ALJ") Barry Anderson conducted a hearing on October 14, 1998, in which Klangwald was represented by Terrence J. Kenny, Esq.  (Id. at 13, 19, 101.) Thereafter, the ALJ issued a decision on January 12, 1999 finding that Klangwald was not "under a disability, as defined in the [Social Security] act, at any time through the date of th[e] decision."  (Id. at 14.)  Thus, the ALJ concluded that Klangwald was not entitled to DIB or SSI.  (Id. at 19.)

This Court, upon the Commissioner's request for an order remanding this action pursuant to sentence four of Section 405(g), reversed the January 12, 1999 decision and remanded it for further administrative action.  (Id. at 267.)  Following remand, ALJ Daniel W. Shoemaker Jr. conducted a hearing on August 23, 2002, in which Klangwald was represented by her current

2

counsel, Thomas Klein, Esq. (<u>Id.</u> at 197, 205.)  The ALJ issued a decision on September 16, 2002 concluding that Klangwald "was not under a disability, as that term is defined in the Social Security Act and regulations, during the period of May 31, 1995 through February 28, 2002" but was disabled as of February 28, 2002. (<u>Id.</u> at 198.)

The ALJ found, <u>inter alia</u>, that (1) for the period prior to February 28, 2002, Klangwald "was capable of performing less than a full range of light work activity", (2) the reports of Klangwald's treating and examining physicians provide substantial evidence that she was severely disabled as of February 2002, but not before that date, (3) Klangwald's only impairments that constitute "severe" impairments under the Social Security Act are obesity and chondromalacia of both patellas, (4) Klangwald has no impairment that meets the criteria of any impairment listed in Appendix 1, Subpart P, Regulation Number 4 of the Code of Federal Regulations, (5) Klangwald's contentions regarding her ability to work during the period beginning May 31, 1995 and ending February 28, 2002 are not credible, and (6) "[c]onsidering [Klangwald's] age, education, work experience, and residual functional capacity, [Klangwald], as of February 28, 2002, but not prior thereto, could not make a successful vocational adjustment to any jobs which existed in significant numbers in the national economy [but] [p]rior to February 28, 2002, she could make a successful

3

adjustment." (Id. at 203-04.)  The ALJ held that Klangwald was "not entitled to a period of disability and to disability insurance benefits under Sections 216(i) and 223 of the Social Security Act". (Id. at 205.)  However, he also held that Klangwald had been disabled since February 28, 2002 under section 1614(a)(3)(A) of the Social Security Act, and thus, she was entitled to SSI payments if she met the income and other general eligibility requirements. (Id.)

Klangwald requested that the Appeals Council review the ALJ's September 16, 2002 decision. (Id. at 193.)  On April 11, 2005, the Appeals Council found that the ALJ's September 16, 2002 decision was "supported by substantial evidence." (Id. at 188.)  Klangwald then brought this action on June 6, 2005. (Dkt. entry no. 1.)

## DISCUSSION

### I.  Legal Standards

#### A.  Applicable Standard Of Review

The Court may review a "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The Court may affirm, modify, or reverse the Commissioner's decision with or without remanding the case for a rehearing. Id. However, this judicial review is limited.  The Court must affirm the Commissioner's decision regarding disability benefits if an examination of the record reveals that the findings of fact are

4

supported by substantial evidence.  Id.; Reefer v. Barnhart, 326
F.3d 376, 379 (3d Cir. 2003).  "Substantial evidence" in the
context of a social security matter is defined as less than a
preponderance of the evidence but "more than a mere scintilla,"
i.e., such evidence "as a reasonable mind might accept as
adequate to support a conclusion." Richardson v. Perales, 402
U.S. 389, 401 (1971).  This standard "is deferential and includes
deference to inferences drawn from the facts if they, in turn,
are supported by substantial evidence." Schaudeck v. Comm'r of
Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

        The Court, despite the deference given to administrative
decisions, "retain[s] a responsibility to scrutinize the entire
record and to reverse or remand if the . . . decision is not
supported by substantial evidence." Smith v. Califano, 637 F.2d
968, 970 (3d Cir. 1981).  Moreover,

        [a] single piece of evidence will not satisfy the
        substantiality test if the [Commissioner] ignores, or
        fails to resolve, a conflict created by countervailing
        evidence.   Nor is evidence substantial if it is
        overwhelmed by other evidence - particularly certain
        types of evidence (e.g., that offered by treating
        physicians) - or if it really constitutes not evidence
        but mere conclusion.

Kent v. Schweiker, 710 F.3d 110, 114 (3d Cir. 1983).  "That the
record contains evidence which could have supported a different
conclusion does not undermine" the Commissioner's decision
provided that the record contains substantial evidence supporting
that decision. Rivera v. Shalala, No. 94-2740, 1995 WL 495944,

                                    5

at *3 (D.N.J. July 26, 1995).  The Commissioner is required,
however, to address and reconcile medical evidence that would
support a contrary conclusion.  Schaudeck, 181 F.3d at 434-35.

   B.   **Standards for Determining Eligibility for Social
        Security Disability Benefits**

   The term "disability" is defined in the Social Security Act
as the "inability to engage in any substantial gainful activity
by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual
is determined to be disabled if the individual's "physical or
mental impairment or impairments are of such severity that [the
individual] is not only unable to do his [or her] previous work
but cannot, considering his [or her] age, education, and work
experience, engage in any other kind of substantial gainful work
which exists in the national economy."  Id. at § 423(d)(2)(A).

   An ALJ employs a five-step process in determining whether a
person is "disabled."  In the first step, the ALJ determines
whether the claimant is currently engaged in "substantial gainful
activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is so
engaged, the ALJ will find that the claimant is not disabled and
the application for disability benefits will be denied.  Id. at
§ 404.1520(b).  If the claimant is not employed, the ALJ will
consider the medical severity and duration of the claimant's

6

impairment or combination of impairments in the second step.  Id. at § 404.1520(a)(4)(ii).  A "severe impairment" is one that significantly limits the claimant's physical or mental ability to do basic work activities, including, inter alia, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions.  Id. at §§ 404.1521(a)-(b), 416.921(a)-(b).  A claimant who does not meet this requirement is not disabled.  Id. at § 404.1520(c).  In essence, the second step requires a threshold-level demonstration of severe impairment without consideration of the claimant's age, education, and work experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

If the claimant shows severity, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the CFR.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment meets or equals a listed impairment, then the claimant is presumed to be disabled, and the evaluation ends there.  Id. at § 404.1520(d). If the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four.  Id. at § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past.  Id. at § 404.1520(a)(4)(iv). The claimant, if able to resume the former occupation, will not

7

be considered disabled. Id. If the claimant cannot resume previous work, the ALJ moves to step five and considers the claimant's ability to perform other work that is available in the national economy. Id. at §§ 404.1520(a)(4)(v), 404.1520(e). This inquiry requires the ALJ to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience. Id. A claimant will be found disabled if the claimant is unable to adjust to any other work in the national economy. Id. at § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process. Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). Once a claimant meets this burden, the burden shifts to the Commissioner in step five to show that the claimant has the transferable skills that would allow him or her to engage in alternative substantial gainful employment. Id. In determining whether a claimant is entitled to disability benefits, the ALJ "must consider all evidence and give some reason for discounting the evidence [the ALJ] rejects." Id. The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected. Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981). Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice. Id. While the ALJ is not required to reference each and every treatment notation with

particularity in the analysis, the ALJ must "consider and evaluate the medical evidence in the record consistent with [his or her] responsibilities under the regulations and case law." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). An ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429. This policy allows the Court to properly review the ALJ's decision pursuant to Section 405(g) to determine whether it is supported by substantial evidence. Cotter, 642 F.2d at 705. The Court, without an indication as to what evidence the ALJ considered or rejected, "cannot tell if significant probative evidence was credited or simply ignored." Id.

## II. Legal Standards Applied Here

Klangwald argues that the ALJ's findings are not supported by substantial evidence and are based on factual and legal errors. (Pl. Br., at 7.) Specifically, Klangwald argues that the ALJ erred by (1) concluding at step two of his analysis that her cardiac and back injuries were not severe impairments, (2) failing to consider her cardiac and back impairments in combination with her knee impairments in determining whether her impairments equal a listing at step three of his analysis, (3) erroneously determining the onset date of her impairments, and (4) determining that her residual functional capacity prior to

February 2002 enabled her to do a significant range of sedentary work.  (<u>Id.</u> at 7-8.)  In contrast, the Commissioner argues that "substantial evidence of record demonstrates that [Klangwald] was not disabled before February 28, 2002", and thus, the ALJ's decision should be affirmed.  (Def. Br., at 2.)

### A.  Sufficiency of the ALJ's Analysis at Step Three

Klangwald asserts that, contrary to the ALJ's findings, her cardiac and back impairments did constitute "severe" impairments under the Social Security Act and case law interpreting the act. (Pl. Br., at 12.)  Klangwald further asserts that the "ALJ did not properly consider whether Klangwald met or equaled the severity of the Listings especially with combined impairments and apparently misunderstood the medical evidence and severity of her condition."  (<u>Id.</u> at 13.)  Thus, Klangwald argues that the ALJ's "[f]ailure to even develop and [sic] the Listings issues at Step 3 is clear error requiring remand.  [She] had these multiple impairments prior then [sic] her disability date and should have been fully considered for the earlier period."  (<u>Id.</u> at 15.)

Klangwald's assertions are without merit because the ALJ did consider the medical evidence and other appropriate factors in reaching his finding that her impairments did not meet or medically equal any of the listings.  In step three of the sequential analysis, "the ALJ must determine whether the impairment is equivalent to one of a number of listed impairments

10

that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Pearson v. Barnhart, 380 F.Supp.2d 496, 504 (D.N.J. 2005).  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five, where the ALJ "must determine whether the claimant retains the ability to perform either his former work or some less demanding employment." Id.

Klangwald relies on, inter alia, Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112 (3d Cir. 2000), in which the Third Circuit held that "this Court requires the ALJ to set forth the reasons" for his or her decision. Id. at 118-19.  The ALJ, however, is not required "to use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  Rather, the ALJ's findings need only provide "sufficient development of the record and explanation of findings to permit meaningful review." Id.

The ALJ's opinion here provided a thorough review of all of the medical records and a comprehensive discussion of Klangwald's condition to create a sufficient basis for judicial review.  The ALJ at step two found that Klangwald's obesity and chondromalacia of both patellas constitute "severe" impairments that impose significant restrictions on her ability to perform basic work

activities.  (A.R., at 199.)  However, the record indicates that Klangwald did not receive treatment for her (1) alleged superventricular tachycardia (heart condition) for several years prior to the ALJ's decision and (2) alleged lumbar spine injury (back injury) at all.  (Id.)  Thus, the ALJ correctly found that Klangwald's superventricular tachycardia and lumbar spine injury were not "severe" impairments during the stated time period.  (Id.)  Accordingly, Klangwald's assertion that the ALJ's "finding at Step 2 tainted the findings at Step 3 and Step 5" is not supported by the record.  (Pl. Br., at 13.)

The ALJ only considered Klangwald's knee impairments at step three of his analysis based on his previous determination at step two that these were her only "severe" impairments.  As a result, the ALJ concluded at step three that Klangwald "has no impairment, which meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1)."  (Id.)  Because the Court finds that the ALJ's conclusions at step two were supported by the record and the ALJ specifically addressed the medical evidence concerning the asserted knee impairments at step three, we find that the ALJ's determination with respect to step three of the analysis was not "clear error requiring remand".  (See id. at 15.)

**B.   Sufficiency of the ALJ's Assessment at Step Five**

The ALJ concluded:

> for that period prior to February 28, 2002, relying on the medical evidence of record and the testimony presented, especially that of the Vocational Expert, I find that the claimant was capable of performing less than a full range of light work activity and as such, a finding of "not disabled is reached."

(A.R., at 203.) The ALJ explained that the medical evidence indicated that Klangwald was able to perform sedentary work activities from October 1998 through February 2002.  (Id.) Nevertheless, the ALJ did conclude that "[b]eginning in February 28, 2002, the claimant's functional capacity for sedentary work was reduced by additional limitations", and thus, Klangwald was disabled after this date.  (Id. at 204.)

Klangwald contends, with respect to the ALJ's determination that she was not disabled before February 28, 2002, that "[s]he has 'severe' impairments and each of these impairments caused significant limitations . . . [and] [a]ll these limitations were not discussed or included in the RFC assessment and determination."  (Id. at 18.)  She further contends that (1) the ALJ improperly failed to include all of her impairments and limitations in his RFC assessment, and (2) the ALJ's finding at step five that Klangwald could perform sedentary work on a sustained basis before February 28, 2002, is not supported by substantial evidence.  (Id. at 19.)  Thus, Klangwald argues that the ALJ failed to adequately explain how she could work on a

13

sustained basis before February 28, 2002, and instead, "simply trie[d] to either ignore or reject significant medical findings and testimony in his RFC evaluation at Step 5." (Id. at 19-20.) The Court disagrees, however, and finds that the ALJ's conclusions regarding Klangwald's RFC and ability to work before February 28, 2002 are supported by substantial evidence in the record.

The ALJ, in his analysis, discussed the evidence relating to Klangwald's medical conditions, including (1) a medical report dated October 28, 1998 in which Klangwald's treating physician stated that she could stand for about one hour and sit for four hours, and thus, had the ability to perform "sitting work", (2) evidence of a medical examination conducted on February 26, 2002 during which Klangwald complained of knee pain and stiffness but denied having any chest pain, palpitation, nausea, vomiting, dizziness, shortness of breath, urinary symptoms, or any other problem, (3) a medical report dated February 28, 2002, in which Dr. Barbara Keenan reported that Klangwald can lift ten pounds on an occasional basis and sit for less than six hours, but cannot stand or walk for more than ten minutes at a time, and concluded that she is only capable of performing part-time sedentary work, and (4) the testimony of a vocational expert concluding that Klangwald lacked the physical ability to perform her last relevant work, but could perform sedentary work from October 1998

14

through February 2002.  (<u>Id.</u> at 203-06.)  The ALJ explained that
he found Klangwald's own statements regarding her impairments and
their impact on her working ability to be "not credible for the
period from May 31, 1995 through February 28, 2002, in light of
[her] own description of her activities and life style, and the
degree of medical treatment required during this period."  (<u>Id.</u>
at 200 (citation omitted).)  Further, the ALJ noted that he gave
appropriate consideration to the assessments of the non-examining
State Agency review physicians, which concluded that Klangwald
was "not disabled".  (<u>Id.</u> at 203.)

 The <u>Burnett</u> court rejected the findings and analysis of an
ALJ after concluding that the ALJ disregarded without
acknowledgment or explanation both the testimony of the claimant
and objective medical diagnoses and reports, including one report
finding the claimant "permanently and totally disabled".
<u>Burnett</u>, 220 F.3d at 119-22.  In contrast, the ALJ here discussed
the material medical evidence and testimony, as the
aforementioned excerpts from the record demonstrate.  (A.R. at
200-03.)  The ALJ examined the extensive medical and testimonial
evidence available, including reports by treating physicians,
Klangwald's own testimony, and the assessments of state agency
physicians, in accordance with his responsibilities under the
Social Security Act and corresponding regulations.  See <u>Fargnoli</u>,
247 F.3d at 42.  Any arguments Klangwald advanced to the contrary

are not supported by the record.  Therefore, the Court concludes that the ALJ's determination that Klangwald could perform light work activity and was not disabled before February 28, 2002 is supported by substantial evidence.  (See id. at 203.)[1]

### C. Appropriateness of the Legal Standards Employed by the ALJ in Evaluating the Evidence at Step Five

Klangwald argues that the Commissioner did not apply the proper legal standards in evaluating the evidence and did not sustain his burden of proof at step five of the analysis.  (Pl. Br., at 22.)  Specifically, Klangwald asserts that the ALJ improperly used the Medical Vocational Guidelines to sustain his burden of proving that she was capable of substantial gainful employment before February 28, 2002.  (Id. at 23.)  Klangwald asserts that vocational testimony or evidence was needed for the ALJ to satisfy the burden.  (Id.)  Moreover, Klangwald contends

---

[1] This Court also rejects Klangwald's assertion that the "ALJ erred as a matter of law in not calling a medical advisor at the hearing to help infer the proper disability onset date." (Pl. Br., at 22.)  The Court acknowledges that an impairment's onset date may be determined even if contemporaneous medical records do not exist.  See Spellman v. Shalala, 1 F.3d 357, 363 (5th Cir. 1993) ("[L]ack of evidence alone is not sufficient to support a finding that an impairment did not exist at a disabling level of severity.")  Nevertheless, as discussed above, the ALJ reviewed numerous medical reports and other evidence and considered the testimony of Klangwald, her former boyfriend, and a vocational expert.  Therefore, the ALJ's onset determination had a "legitimate medical basis", and thus, constitutes an "informed judgment of the facts".  See id. (remanding case because medical evidence was ambiguous as to onset date after concluding that decision did not have "legitimate medical basis" and was not "informed judgment of the facts").

that the ALJ erred by (1) failing to consider the combination of all of her impairments, and (2) questioning her credibility and rejecting her subjective testimony without explanation.  (Id. at 23-26.)

These arguments, however, are also not supported by the record.  First, the ALJ did rely on the testimony of a vocational expert, as well as substantial additional evidence, in reaching the determination that the Commissioner met his burden of proof at step five.  (A.R., at 202-03.)  Further, as previously discussed, the ALJ correctly found that Klangwald's additional alleged impairments, superventricular tachycardia and lumbar spine injury, are not "severe" impairments that should have been considered in combination with her knee impairments.  (Id.) Third, in his analysis the ALJ explained:

> The claimant's statements concerning her impairments and their impact on her ability to work are not credible for that period from May 31, 1995 through February 28, 2002, in light of the claimant's own description of her activities and life style, and the degree of medical treatment required during this period.  An assessment of these factors during the period up to February 28, 2002, does not support a finding of disability.

(Id. at 200.)  Thus, the ALJ did provide an explanation for his conclusion that Klangwald's testimony regarding her impairments before February 28, 2002 lacked credibility.  See Cotter, 650 F.2d at 482 (stating that short sentence or paragraph explaining basis for ALJ's decision to reject evidence is sufficient).

17

Therefore, the Court finds that the ALJ applied the appropriate legal standards in evaluating Klangwald's claim and satisfied his burden of proof at step five.

**CONCLUSION**

The Court, finding that the Commissioner's decision was supported by substantial evidence, will therefore affirm the Commissioner's determination that Klangwald was not disabled prior to February 28, 2002.  The Court will issue an appropriate order.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

18